**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RONALD R. DRUMMOND,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 23-CV-4767** |
| | : | |
| **STEVEN ANGELUCCI,** *et al.*, | : | |
| **Defendants.** | : | |

**<u>MEMORANDUM</u>**

**MARSTON, J.**                                                              **May 10, 2024**

Plaintiff Ronald R. Drummond, a pretrial detainee incarcerated at the Curran-Fromhold Correctional Facility ("CFCF"), filed this civil rights action against several CFCF correctional officials, including Warden Steven Angelucci, Major Butler, Lieutenant Hill, and Correctional Officer Copes,[1] based on the conditions of his current confinement.[2]  Plaintiff also seeks leave to proceed *in forma pauperis*.  For the following reasons, the Court will grant Plaintiff leave to proceed *in forma pauperis* and dismiss his Amended Complaint in part.

**I.      FACTUAL ALLEGATIONS**

Plaintiff's Amended Complaint focuses on two separate sets of facts, one set that applies to his claims against Defendant Angelucci, and a second set that serves as the basis for his claims against Defendants Butler, Hill, and Copes.

---

[1] Plaintiff only provides the first name of Defendant Angelucci in the Amended Complaint.

[2] On November 30, 2023, the Court received two letters from Plaintiff, which were docketed as two separate civil actions—the instant matter and *In re: Drummond*, Civ. A. No. 23-4768 (E.D. Pa.).  The Court directed Plaintiff in each case to file a proper complaint in accordance with the Federal Rules of Civil Procedure and to either pay the fees or seek leave to proceed *in forma pauperis*.  Plaintiff informed the Court that he only intended to pursue one lawsuit and filed the pending Complaint, which was docketed as an Amended Complaint.  (Doc. No. 8.)  The factual allegations discussed in this opinion are therefore taken from Plaintiff's Amended Complaint and the exhibits attached thereto.

### A.    Allegations Relating to Warden Angelucci

As the basis for his claims against Defendant Warden Angelucci, who Plaintiff claims is "in charge of the Prisons Security and running of the facility," Plaintiff alleges that on October 31, 2023, the entire prison, including C-Building where Plaintiff was housed, was placed on a ten-day lockdown due to "an isolated incident that occurred in D-Building."  (Doc. No. 8 at 4, 6.)[3]  As a result of the lockdown, Plaintiff spent eight days confined for twenty-four hours per day without a shower, recreation, phone calls, access to the law library, or visits.  (*Id.*)  Plaintiff contends that these "privileges were stripped away" without "written or verbal notification." (*Id.*)  When Plaintiff inquired about the lockdown, correctional personnel "said this came from up top and [was] above [their] pay grade."  (*Id.*)  Plaintiff submitted a grievance about the lockdown but did not receive a response.  (*Id.*)

Plaintiff also alleges that, at some unspecified time, rules were "hung up on the unit" that outlined the following punishments for misconduct on the block:  (1) "15 days lock down for a group fight"; (2) "7 day [lock down] if a regular 1 on 1 fight happen[s]"; and (3) "1 week [loss] of commissary if the block smells like smoke."  (*Id.*)  Plaintiff contends that these rules could be enforced on inmates even if they were not involved in the offending activity.  (*Id.*)  The rules were removed after three weeks, but Plaintiff alleges that they are "enforced at will."  (*Id.* at 6–7.)

### B.    Allegations Relating to Butler, Hill, and Copes

As to his claims against the Major Butler, Lieutenant Hill, and Correctional Officer Copes, Plaintiff contends that on October 27, 2023 he asked Defendant Copes when she was going to "make a tour to open the cell doors" because he had to use the restroom.  (*Id.* at 8.)

---

[3] The Court adopts the pagination supplied to the Amended Complaint by the CM/ECF docketing system.

Copes allegedly did not respond and, when Plaintiff asked again fifteen minutes later, she told him to "use the shower to urinate in." (*Id.*) Plaintiff responded, "no thank you I need to take a Number 2." (*Id.*) Copes retorted "that's [your] problem," and despite Plaintiff's requests, she refused to get a supervising officer. (*Id.*) When Plaintiff requested a grievance, Copes allegedly "called [Plaintiff] 'a rat' in front of [the] entire [block]" and told Plaintiff that if he wrote her up, he would "see who will get the last laugh." (*Id.*)

Later that same day, Plaintiff submitted a grievance about Copes's conduct, which he alleges was never answered. (*Id.* at 8, 12; *see also id.* at 14 (copy of grievance submitted by Plaintiff).) The grievance was collected by Defendant Hill, who Plaintiff identifies as "the supervisor of C building [who is] in charge of picking grievance[s] up and [disciplining] staff," and a second, non-defendant Lieutenant. (*Id.* at 4, 7.) These individuals represented that they would forward the grievance to Defendant Major Butler, who was "in charge of responding to the grievances." (*Id.*) Plaintiff also alleges that he spoke to Lieutenant Hill "on various [occasions] about the unprofessional conduct of C/O Copes." (*Id.*) Hill claimed she spoke with Copes and told Plaintiff to file a grievance. (*Id.*) When Plaintiff responded that he had filed two grievances, Hill informed him that "due to the shortage of staff its highly unlikely that anything will be done so [he] should just stay out of jail." (*Id.*)

Plaintiff alleges that he was able to avoid Copes until November 21, 2023 when, at approximately 2:10 p.m., Copes got into an argument with Plaintiff's cellmate.[4] (*Id.* at 8.) When Plaintiff requested a superior officer, Copes pepper sprayed him in the face but did not spray his cellmate. (*Id.*) Copes allegedly waited approximately fifteen minutes before calling Lieutenant Hill, who took Plaintiff to the medical unit. (*Id.*) Later that evening, Copes wrote "a

---

[4] Plaintiff alleges that Copes "refused to feed [him] and his cell mate," although it is unclear if that is what generated the argument. (Doc. No. 8 at 8.)

minor misconduct [against Plaintiff]," which Defendant Hill "signed off on." (*Id.* at 7–8; *see also id.* at 15 (copy of November 21, 2023 misconduct filed by Copes against Plaintiff).)  This misconduct report, however, was ultimately dismissed.  (*Id.* at 8.)

One week later, on November 27, 2023, Copes displayed Plaintiff's charges to other inmates.  (*Id.* at 9.)  A review of public dockets reflects that Plaintiff had been charged with various sex offenses, including raping a child.  *See Commonwealth v. Drummond*, No. CP-51-CR-0006119-2023 (Ct. Comm. Pl. Phila.); *Commonwealth v. Drummond*, No. CP-51-CR-0004739-2023 (Ct. Comm. Pl. Phila.).[5]  Plaintiff was subsequently "approached," and informed by some unidentified individual "that [he would] need to watch [his] back."  (Doc. No. 8 at 9.)  On December 5, 2023, Copes again showed and discussed Plaintiff's charges with other inmates.  (*Id.*)  Plaintiff alleges that Copes's "enforcement team," *i.e.*, a group of inmates who allegedly fraternize with Copes, walked around the unit "requesting paperwork," including from Plaintiff.  (*Id.*)

Plaintiff further alleges that on November 27, 2023, Copes was serving food on the unit and told Plaintiff and his cellmate that "they were short [on] cake and bread," so Plaintiff and his cellmate did not receive these items, even though inmates on the bottom tier received them and Copes's "hit squad had extras."  (*Id.*)

C.     **Plaintiff's Claims**

Plaintiff brings assorted constitutional claims against Defendants Angelucci, Copes, Butler, and Hill, based on the above allegations.  He claims he was injured in various respects,

---

[5] The Court takes judicial notice of these publicly available court dockets.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" (internal citations omitted)).

including a "moment of uncomfortability when pepper sprayed," concern that he has to "watch his back" because he has been labeled a rat and his charges have been exposed, and being "unable to call [his] family due to being labeled a rat." (*Id.* at 5.)  Plaintiff further alleges that these events have required him to take a higher dose of medication to help with his depression. (*Id.*)  As relief, Plaintiff seeks damages and an injunction prohibiting the use of "group punishing while implementing better professional training." (*Id.*)

## II.   STANDARD OF REVIEW

As an initial matter, the Court grants Plaintiff leave to proceed *in forma pauperis*.  (Doc. No. 6.)  Pursuant to 28 U.S.C. § 1915(a), federal courts may authorize the commencement of a civil action, "without prepayment of fees or security," by a plaintiff "who submits an affidavit that includes a statement of all the assets [he] possesses," showing that he is "unable to pay" the costs of the lawsuit.  28 U.S.C. § 1915(a)(1); *see also Chain v. Gross*, Civil Action No. 18-4610, 2018 WL 5631642, at *1 (E.D. Pa. Oct. 31, 2018) ("§ 1915(a) allows a litigant to commence a civil or criminal action in federal court *in forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit.") (quotation marks and citations omitted).  If, upon "review [of] the affiant's financial statement," the court is "convinced that [the plaintiff] is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*."  *Chain*, 2018 WL 5631642, at *2 (quotation marks and citation omitted).

Here, after reviewing Plaintiff's IFP application and corresponding documents (Doc. Nos. 6–7), it appears that he is unable to pay the costs of bringing this lawsuit.  The Court will therefore grant him leave to proceed *in forma pauperis*. [6]

---

[6] Because Plaintiff is a prisoner, he must still pay the $350 filing fee in installments as mandated by the Prison Litigation Reform Act.

Because we have granted Plaintiff leave to proceed *in forma pauperis*, we are statutorily mandated by 28 U.S.C. § 1915 to conduct a preliminary review (i.e., screening) of this action. *See, e.g.*, *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("[I]t is proper for district courts to dismiss facially inadequate complaints *sua sponte* under . . . § 1915(e)(2)(B)."); *Smith v. Shop Rite*, Civil Action No. 3:17-cv-0907, 2018 WL 2424136, at *2 (M.D. Pa. May 9, 2018) ("This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by litigants given leave to proceed *in forma pauperis*.").  Section 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Muchler v. Greenwald*, 624 F. App'x 794, 797 (3d Cir. 2015), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

As Plaintiff is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).  "At this early stage of the litigation, [the Court will] accept the facts alleged in [the *pro se*] complaint as true, draw all reasonable inferences in [Plaintiff's] favor, and ask only whether [the] complaint, liberally construed, contains facts sufficient to state a plausible claim."  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015) (quotation marks and alterations omitted)).

## III.    DISCUSSION

Plaintiff asserts claims pursuant to § 1983, the vehicle by which federal constitutional claims against state officials may be brought in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Section 1983 claims are brought against state officials in either their individual or official capacities.[7]  *Miller v. Goggin*, 672 F. Supp. 3d 14, 31  (E.D. Pa. 2023).  However, to bring forth an individual capacity claim, a plaintiff must allege facts demonstrating that each defendant was personally involved and played an "affirmative part" in the alleged constitutional violation.  *Id.* at 34; *see also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("[A] defendant in a civil rights action must have personal involvement in the alleged wrongs.").  Personal involvement can be demonstrated through "allegations of personal direction or of actual knowledge and acquiescence."  *Evancho*, 423 F.3d at 353.  But such allegations "must be made with appropriate particularity," *Rode v.*

---

[7] In drafting his Amended Complaint, Plaintiff checked the boxes on the form he used indicating that he seeks to name the Defendants in their official capacity only.  (Doc. No. 8 at 2–3.)  Plaintiff appears not to have understood the implication of checking the official capacity box.  Claims against municipal employees named in their official capacity are indistinguishable from claims against the governmental entity that employs them.  *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).  Thus, official capacity claims are treated as claims against the entity, here the City of Philadelphia, which means that the pleading standards for municipal liability apply.  *Id.*  Because Plaintiff does not allege a basis for municipal liability, *see Monell*, 436 U.S. at 694 (holding that, to state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation), the Court will liberally construe the Amended Complaint to assert claims against the Defendants in their individual capacities.  *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To determine whether a plaintiff sued state officials in their official capacity, we first look to the complaints and the course of proceedings." (quotation marks omitted)); *Coward v. City of Philadelphia*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting claim against defendant in his individual capacity to proceed even though "[plaintiff] did not check the box indicating a desire to sue [that defendant] in his individual capacity" where the allegations clearly sought relief based on the defendant's conduct).

*Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988), meaning the Amended Complaint must allege the particulars of the "conduct, time, place, and persons responsible," *Evancho*, 423 F.3d at 353.

Furthermore, while liability under § 1983 cannot be predicated on a respondeat superior basis and state actors typically "are liable only for their own unconstitutional conduct," there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* However, generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (per curiam).

With this understanding in mind, the Court discusses Plaintiff's claims against Defendants Angelucci, Copes, Butler, and Hill in turn.

### A.    Claims Against Warden Angelucci

The Court turns first to Plaintiff's claim against Warden Angelucci, which, as discussed above, arises from a separate set of facts from the claims against the other Defendants. Liberally construing the Amended Complaint, the Court understands Plaintiff to bring forth a Fourteenth

Amendment due process claims against Angelucci related to a lockdown he faced due to the misconduct of another inmate.[8]

Since Plaintiff was a pretrial detainee at the time of the lockdown, the Fourteenth Amendment applies to his claim regarding the conditions of his confinement. *See Hubbard v. Taylor*, 399 F.3d 150, 164–67 (3d Cir. 2005). To establish a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee."); *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020) (noting that "detainees may not be punished before they are adjudicated guilty").

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious." *Id.* Only conditions of confinement that "cause inmates to endure such genuine privations and hardship over an extended period of time" violate the Fourteenth Amendment. *Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) (internal quotation marks omitted); *see also Hope*, 972 F.3d at 326 (noting that in assessing whether conditions amount to unconstitutional punishment of detainees, courts "consider the totality of the circumstances of confinement, including any genuine privations or

---

[8] As an initial matter the Court notes that Plaintiff has also not sufficiently alleged that Warden Angelucci was personally involved in the purported unconstitutional deprivation, as is required for a claim under § 1983. *See supra* at 7–8. While Plaintiff alleges that he was told by other correctional officers that the lockdown came from "up top" (Doc. No. 8 at 6) and that Angelucci was "in charge of The Prisons Security and running of the facility" (*id.* at 4), these allegations fail to demonstrate that Angelucci himself, as opposed to some other management-level individual, placed the prison in lockdown. *Evancho*, 423 F.3d at 353.

hardship over an extended period of time"). The subjective component, on the other hand, asks whether the officials acted with a "sufficiently culpable state of mind." *Stevenson*, 495 F.3d at 68. To satisfy the subjective component, a prisoner generally must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Edwards v. Northampton County*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)). This state of mind requirement is also satisfied "when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Stevenson*, 495 F.3d at 68; *see also Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). In determining whether a restriction or condition is related to a government interest, the Supreme Court has warned that these "considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Bell*, 441 U.S. at 540 n.23. The Court must also keep in mind that "practical considerations of detention justify limitations on 'many privileges and rights'" and that a detainee "simply does not possess the full range of freedoms of an unincarcerated individual." *Hope*, 972 F.3d at 326 (quoting *Bell*, 441 U.S. at 545–46). In determining whether pretrial detainee was subjected to unconstitutional punishment, we must consider the totality of the circumstances. *Bistrian v. Levi*, 696 F.3d 352, 372 (3d Cir. 2012).

Here, the Court finds that Plaintiff has failed to meet either the objective or subjective components of an unconstitutional punishment under the Fourteenth Amendment.  First, as to the objective component, Plaintiff asserts that the prison was subjected to a ten-day lockdown in which he spent eight days confined in his cell for twenty-four hours per day without a shower, recreation, phone calls, access to the law library, or visits.  (Doc. No. 8 at 6.)  The limited withdrawal of these privileges, however, is not "sufficiently serious" to meet the standard of unconstitutional punishment, especially considering that Plaintiff has not alleged an injury he endured as the result of this lockdown.  *See Thomas v. City of Philadelphia*, No. 21-CV-0441, 2021 WL 1614411, at *6–7 (E.D. Pa. Apr. 23, 2021) (denying Fourteenth Amendment due process claim related to fifteen-day lockdown during which the plaintiff was denied access to showers, phone calls, and legal counsel and noting that prisoners have "no right to unlimited telephone use"); *Figueroa v. Scotts*, No. 21-CV-0743, 2021 WL 1424687, at *6–7 (E.D. Pa. Apr. 15, 2021) (dismissing, at the screening stage, pretrial detainee's conditions of confinement claim in which the plaintiff alleged he was provided limited access to showers and phone calls and noting with respect to the withdrawal of phone calls that an inmate must show "prejudice or actual injury"); *cf. Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) (per curiam) (holding that the post-trial plaintiff did not face unconstitutional conditions where he was denied the ability to shower and exercise for a period of fifteen days but did not allege that he suffered any harm as a result of that denial).  Thus, the conditions Plaintiff endured during this 10-day lockdown fail to meet the objective component of an unconstitutional punishment.[9]

_____

[9] The Court also notes that, to the extent Plaintiff is attempting to allege that his First Amendment right to access the courts was violated based on this limited denial of law library time, such a claim also fails. Plaintiff has not alleged that, as a result of this withdrawal of law library access, he lost a "nonfrivolous" and "arguable" claim, as is required to state a cause of action for denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *see also Rivera v. Monko*, 37 F.4th 909, 920 (3d Cir. 2022) (holding that there is no "freestanding right to a prison law library"; rather, a prisoner alleging a

Second, as to the subjective component, Plaintiff has not shown that Warden Angelucci, to the extent he was involved, imposed this lockdown for the purpose of punishing Plaintiff. Instead, Plaintiff acknowledges that this lockdown was the result of an "incident" with other inmates.  (Doc. No. 8 at 6.)  While Plaintiff may object that it was not his conduct that triggered the lockdown, this allegation suggests that the lockdown was imposed as a means of maintaining security within the institution rather than to punish Plaintiff.  Thus, especially in light of the deference awarded to prison officials in determining the appropriate means to secure their facility, *Bell*, 441 U.S. at 540 n.23, the Court cannot find that this lockdown violated Plaintiff's constitutional rights, *see Saunders v. Hill*, No. 19-CV-4395, 2019 WL 5558961, at *4 (E.D. Pa. Oct. 24, 2019) (dismissing conditions of confinement claim in which the plaintiff endured a ten-day lockdown during which showers, phone calls, visitations, and law library privileges were denied for varying periods of time and reasoning that the lockdown was imposed for security purposes); *Mayberry v. Hyatt*, No. 3:22-CV-45 DRL-MGG, 2022 WL 225696, at *1 (N.D. Ind. Jan. 25, 2022) (denying Fourteenth Amendment due process claim relating to lockdown caused by other inmates' misconduct and reasoning that "[s]hort-term lockdowns for administrative, protective, or investigative purposes do not implicate due process, even when inmates are subjected to harsher conditions as a result" and "lockdowns that are imposed to maintain safety

---

denial of access to the courts must demonstrate "actual injury" by alleging the loss of a meritorious claim); *cf. Thomas v. City of Philadelphia*, No. 21-CV-0441, 2021 WL 780310, at *5 (E.D. Pa. Mar. 1, 2021) (dismissing at screening claim for denial of access to the courts where the plaintiff generally alleged that they had not been able to access the law library).  Moreover, the Court's review of Plaintiff's state criminal dockets reveals that he is represented by an attorney, which prevents him from stating a viable denial of access to the courts claim with respect to those matters.  *See Prater v. City of Philadelphia*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) ("We also agree that Prater's inability to access the library as much as he would have liked does not state an access-to-courts claim because appointment of counsel is sufficient to provide a pretrial detainee with 'meaningful access to courts.'" (citations omitted)); *Chapolini v. City of Philadelphia*, No. CV 22-284, 2022 WL 815444, at *10–11 (E.D. Pa. Mar. 17, 2022) (dismissing denial of access to the courts claim where the plaintiff was represented by a lawyer in his underlying criminal case).

and order within the prison do not typically implicate the Constitution"); *cf. Wivell v. Adams Cnty. Adult Corr. Facility*, No. COV/ 4:CV-07-1193, 2007 WL 2155726, at *2–3 (M.D. Pa. July 25, 2007) (holding that the Eighth Amendment was not violated where the plaintiff was subjected to a week-long lockdown as a result of an inmate disturbance and reasoning that "the lock down restrictions were imposed following an inmate disturbance, and thus, based upon a legitimate penological reason and it was of short duration, lasting only one week"); *Autery v. Moore*, No. 22-CV-4015, 2023 WL 2390670, at *4 (E.D. Pa. Mar. 7, 2023) (noting that "maintaining internal security and order in jails and prisons are 'legitimate governmental objectives'").

In sum, Plaintiff has failed to allege facts demonstrating that the lockdown was sufficiently serious or that it was conducted for the purpose of punishment rather than for security. He has thus failed to state a claim for violation of his due process rights under the Fourteenth Amendment against Angelucci. However, because Plaintiff could conceivably bolster these allegations with additional facts regarding actions taken against him, the Court will dismiss this claim without prejudice and grant Plaintiff leave to amend if he can do so in good faith.[10]

---

[10] With respect to Defendant Angelucci, Plaintiff also makes allegations regarding rules that were posted to the unit for a three-week period setting forth the length of lockdowns inmates would face for bad behavior on the block. (Doc. No. 8 at 6.) To the extent Plaintiff intended to assert a Fourteenth Amendment due process claim related to the posting of these rules, such a claim would also fail. As an initial matter, the Amended Complaint fails to demonstrate that Warden Angelucci was personally involved in the alleged constitutional violation. Indeed, while the Amended Complaint states that Angelucci was "in charge of . . . [the] running of the facility," it fails to allege that Angelucci was responsible for imposing these rules or acquiesced in their posting. *See Saisi*, 822 F. App'x at 48 (generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation). And even if Plaintiff had demonstrated that Warden Angelucci was personally involved, Plaintiff has failed to assert that he endured any unconstitutional punishment or deprivations as a result of these rules being posted. *See Franklin v. Sheahan*, No. 97-6534, 1998 WL 312120, at *3 (N.D. Ill. June 5, 1998) (finding allegation that prison rules were arbitrary failed to state a plausible claim where the plaintiff failed to

### B.      Claims Against Correctional Officer Copes

Turning next to Defendant Copes, the Court understands Plaintiff to be raising the

following claims: (1) excessive force in violation of the Fourteenth Amendment; (2) violation of

the Fourteenth Amendment Due Process Clause through Copes filing a false misconduct report

against Plaintiff; (3) failure to protect in violation of the Fourteenth Amendment; and (4) First

Amendment retaliation.[11]   The Court addresses these claims in turn.[12]

### 1.      Excessive Force

The Court begins with Plaintiff's excessive force claim, which is premised on the

November 21, 2023 incident in which Copes pepper sprayed Plaintiff in the face.

"[T]he Due Process Clause protects a pretrial detainee from the use of excessive force

that amounts to punishment."  *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (internal

---

allege that he lacked knowledge of the rules, that he had violated any rules, or that he had actually been
disciplined for violating them).

[11] The Court does not understand Plaintiff to be raising a claim against Copes based on the behavior that
motivated the initial grievance, *i.e.*, denying him permission to use the bathroom.  In any event, without
condoning Copes's allegedly unprofessional comments, Plaintiff has not pled sufficient facts to state a
constitutional claim based on this conduct.  In particular, it is not clear whether Plaintiff was ultimately
deprived of the ability to use the bathroom for more than fifteen minutes and or whether he suffered any
harm as a result.

[12] To the extent Plaintiff intended to raise an additional due process claim against Copes based on his
allegations that Copes "refused to feed [him] and [his] cellmate" on November 21, 2023, and then
deprived them of cake and bread with their meals on November 27, 2023, (Doc. No. 8 at 8, 9), he has not
alleged objectively serious deprivations sufficient to state a claim under the Fourteenth Amendment.  *See
Zanders v. Ferko*, 439 F. App'x 158, 160 (3d Cir. 2011) (per curiam) (concluding that "the alleged
deprivation of three meals over two days [to a diabetic inmate] fails to rise to the level of constitutional
violation"); *Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009) (per curiam) ("The purported
deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation");
*Thomas*, 2021 WL 1614411, at *8 (holding that pretrial detainee not being fed dinner on one occasion did
not violate the Fourteenth Amendment); *cf. Duran v. Merline*, 923 F. Supp. 2d 702, 719–20 (D.N.J. 2013)
(providing that to allege an unconstitutional deprivation of food, a pretrial detainee must allege "both an
objective component (that the deprivation was sufficiently serious) and a subjective component (that the
officials acted with a sufficiently culpable state of mind)").

quotation marks and citation omitted).  To state a due process violation based on excessive force, a pretrial detainee must allege facts to plausibly suggest "that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97.  "[O]bjective reasonableness turns on the facts and circumstances of each case." *Id.* at 397 (internal quotation marks omitted); *Jacobs v. Cumberland County*, 8 F.4th 187, 194 (3d Cir. 2021) (providing that whether unreasonable force has been used against a detainee "requires 'careful attention to the facts and circumstances of each particular case.'" (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used:  the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397.

Plaintiff alleges that Copes needlessly sprayed him in the face with pepper spray when he requested to speak to a superior officer and that she did not spray his cell mate, with whom she had been arguing.  (Doc. No. 8 at 8.)  At this early stage of the litigation, this states a plausible excessive force claim against Copes.  *See Moore v. Rosa*, No. 21-CV-0933, 2021 WL 1143376, at *3 (E.D. Pa. Mar. 25, 2021) (permitting excessive force claim to proceed past screening where the plaintiff was pepper sprayed "without warning" after he asked for a supervisor); *Baker v. Crookus*, No. 21-4615, 2021 WL 5711830, at *3 (E.D. Pa. Dec. 1, 2021) (permitting excessive force claim to proceed past screening where plaintiff alleged that correctional officer's use of pepper spray was "wholly unprompted and that lesser measures may have been appropriate"); *Stokes v. Carney*, No. 21-CV-1435, 2021 WL 4477185, at *11 (E.D. Pa. Sept. 29, 2021)

(permitting excessive force claim to continue past screening where the plaintiff was pepper sprayed for yelling "PREA," in apparent reference to the Prison Rape Elimination Act).

### 2.    False Misconduct

Plaintiff also appears to raise a Fourteenth Amendment due process claim against Copes related to her filing a false misconduct report against him.  "Generally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'"  *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003–06 (7th Cir. 1999)).  Moreover, "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process."  *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (per curiam).  Instead, "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports."  *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (per curiam).   In other words, so long as an inmate is provided certain procedural protections, which include "the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence," the filing of a false misconduct charge does not violate the Fourteenth Amendment Due Process Clause.  *Kanu*, 739 F. App'x at 116; *see also Smith v. Mensinger*, 293 F.3d 641, 653–54 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.").

Here, Plaintiff alleges that Copes filed a false misconduct claim against him related to the November 21, 2023 incident in which he was pepper sprayed after he asked for a supervisor.

(Doc. No. 8 at 8; *see also id.* at 15 (Copes's misconduct report)).  However, Plaintiff does not allege that he was deprived of any procedural protections in relation to this misconduct charge. Instead, Plaintiff acknowledges that the misconduct charge was eventually dismissed, (Doc. No. 8 at 8), suggesting he was provided some sort of process to address Copes's allegation.  *See Concepcion v. Russell*, No. 21-CV-1060, 2021 WL 1061154, at *5 (E.D. Pa. Mar. 18, 2021) (finding that the plaintiff failed to state a due process claim based on a false misconduct report where he alleged that he prevailed at a hearing regarding the allegations).  Without any allegations from which the Court can infer that Plaintiff was not provided the appropriate protections related to this misconduct report, the Court must find that Plaintiff has failed to state a claim for violation of his due process rights.  *See King v. Quigley*, No. 18-CV-5312, 2019 WL 342710, at *2 (E.D. Pa. Jan. 25, 2019) (finding that the plaintiff had failed to state a due process claim premised on a false misconduct report where he had no alleged that there were no procedural protections provided).  But because the predominant issue with this claim is a lack of specificity, the Court will dismiss without prejudice and permit Plaintiff to file an amended complaint as to this claim if he can do so in good faith.

### 3.   Retaliation

Next, Plaintiff asserts a First Amendment retaliation claim against Copes.  In support of this claim, Plaintiff alleges that on October 27, 2023, he requested and filed a grievance against Officer Copes, to which she responded by calling him a "rat" and saying, "write me up you will see who will get the last laugh."  (Doc. No. 8 at 8.)  And although he was able to avoid Copes for a few weeks, as discussed above, on November 21, 2023, Copes pepper sprayed Plaintiff when he asked for a supervisor and later filed a misconduct report against him related to this incident.

(*Id.*)  Approximately one week later, Copes began showing other inmates Plaintiff's charges, which include sex offenses against a child.  (*Id.*)

To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  As to the second prong, "an adverse consequence 'need not be great in order to be actionable;' rather, it need only be 'more than *de minimis*.'"  *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations accepted).  And with regard to the third factor, a prisoner can satisfy "his burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link."  *Id.* at 422.  "'Unusually suggestive' temporal proximity means within a few days but no longer than a month."  *Kostin v. Bucks Cmty. Coll. (Nursing Dep't)*, No. CV 21-850-KSM, 2022 WL 952729, at *11 (E.D. Pa. Mar. 30, 2022).

Here, Plaintiff has pled sufficient facts to state a First Amendment retaliation claim against Copes.  As to the first factor, Plaintiff requesting and filing his grievance was constitutionally protected conduct.  *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (holding that plaintiff engaged in constitutionally protected activity when he filed his grievances); *Watson*, 834 F.3d at 422–23 (3d Cir. 2016) (holding that expressing an intent to file a grievance is constitutionally protected conduct).  Regarding the second factor, the use of pepper spray, the filing of a false misconduct report, and the sharing of Plaintiff's charges with other inmates all constitute "retaliatory action[s] sufficient to deter a person of ordinary firmness

from exercising his constitutional rights." *Rauser*, 241 F.3d at 333; *see also Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (per curiam) (noting that "being issued misconduct charges" is an adverse action for purposes of First Amendment retaliation); *Ross v. Fiss*, No. 21-02080, 2021 WL 6072706, at *5 (M.D. Pa. Dec. 23, 2021) (permitting claim to proceed past screening where plaintiff alleged that defendant "retaliated against him for writing grievances by demanding that Plaintiff cuff up and using OC spray against him for no reason"); *Horan v. Wetzel*, No. 1:CV-13-0140, 2014 WL 631520, at *15 (M.D. Pa. Feb. 18, 2014) (holding that labeling the plaintiff "a child molester in front of other prisoners, in an attempt to provoke other inmates to attack him" supported a First Amendment retaliation claim). And finally, with regard to the third factor, Plaintiff has pled sufficient facts to show that his request for, and eventual filing of, a grievance was "a substantial or motivating factor" for the adverse actions he endured. As an initial matter Copes telling Plaintiff, "write me up you will see who will get the last laugh" after Plaintiff informed her that he was planning to file a grievance, suggests that her subsequent actions were motivated by a desire to retaliate. Moreover, the Court finds that the timing of Copes's use of pepper spray and related false misconduct report, which occurred just three weeks after Plaintiff filed his grievance, is "unusually suggestive" of retaliatory intent.[13] *Cf. Kostin*, 2022 WL 952729, at *11 (noting that temporal proximity to be unusually suggestive, it can be no longer than a month). And as to the sharing of Plaintiff's charges, which occurred roughly a month after Plaintiff filed his grievance, the Court finds, at this stage, that Copes

---

[13] While the Court recognizes that this may be on the longer end of "unusually suggestive" timing, *compare Killen v. N.W. Human Servs., Inc.*, No. 06-4100, 2007 WL 2684541, at *8 (E.D. Pa. Sept.7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation), *with Miller*, 672 F. Supp. 3d at 47–48 (finding three week break unusually suggestive), the Court finds significant that Plaintiff purportedly avoided Copes between filing his grievance and his eventual encounter with her in November when she was arguing with his cellmate. (Doc. No. 8 at 8.) This allegation suggests she may not have had an earlier opportunity to retaliate against him.

spraying Plaintiff with pepper spray and filing a purportedly false misconduct report against him that was eventually dismissed plausibly demonstrates a pattern of antagonism sufficient to meet the third factor.

In sum, taking the allegations in the Amended Complaint as true, Plaintiff has provided a sufficient factual basis for proceeding on his retaliation claim against Copes.

### 4.   Deliberate Indifference, Failure to Protect

Plaintiff also asserts a failure to protect claim against Copes related to her calling him a rat and informing other inmates of his criminal charges.  Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners."  *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).  After all, "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society."  *Farmer*, 511 U.S. at 834 (quotation marks omitted).  To state a plausible failure to protect claim, a plaintiff must allege that:  (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) prison officials acted with deliberate indifference to that substantial risk of serious harm; and (3) the officials' deliberate indifference caused harm.  *See Hamilton*, 117 F.3d at 746; *Burton v. Kindle*, 401 F. App'x 635, 638 (3d Cir. 2010) (per curiam) (applying deliberate indifference standard to failure to protect claim asserted by pretrial detainee).  Deliberate indifference is a subjective standard.  *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).  Plaintiff must allege that the prison officials "knew or were aware of and disregarded an excessive risk to [his] health or safety."  *Id*. at 135.  "[I]t is not sufficient that the official should have been aware" of the excessive risk.  *Id*. at 133.  But at the same time, "subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of

the risk." *Id.*; *see also Kedra v. Schroeter*, 876 F.3d 424, 442 (3d Cir. 2017) ("[T]he obviousness of risk [is] a permissible and highly relevant basis from which to infer actual knowledge."). Moreover, "an inmate need not wait until an actual attack occurs to obtain relief." *Moore v. Mann*, 823 F. App'x 92, 96 (3d Cir. 2020).

Here, Plaintiff alleges that on October 27, 2023, Copes called him a "rat" in front of other inmates when Plaintiff informed Copes of his desire to file a grievance against her. (Doc. No. 8 at 8.) At this early stage of litigation, the Court finds this allegation sufficient to state a failure to protect claim. Courts in this Circuit have routinely recognized that because calling an inmate a "snitch" or a "rat" can result in violence from other inmates, this labeling creates a "substantial risk of harm" for purposes of a failure to protect claim. *See Williams v. Thomas*, No. CIV.A. 12-01323, 2013 WL 1795578, at *5 (E.D. Pa. Apr. 29, 2013) (noting that "district courts in this Third Circuit have found that the mere act of labeling a prisoner a snitch constitutes a substantial risk of harm" and collecting cases); *Moore*, 823 F. App'x at 96 (recognizing that "other circuits have held that prison officials' failure to protect an inmate labeled a 'snitch' constitutes deliberate indifference" and holding the same). And this risk was or should have been sufficiently obvious to a prison official like Copes that the Court can infer the requisite mental state at this early stage. *See Kedra*, 876 F.3d at 442. Indeed, given that Copes called Plaintiff a rat after Plaintiff informed her that he was going to file a grievance against her, it is plausible that subjecting Plaintiff to this risk was Copes's intent in making this statement. Thus, the Court finds that, at this stage, Plaintiff has adequately pled a failure to protect claim based on Copes calling him a "rat."[14]

---

[14] The Court recognizes that some district courts in the Third Circuit have held that where an inmate is deemed a "rat" for reporting correctional officers, as opposed to other inmates, there is no substantial risk of harm. *See, e.g., Jackson v. O'Brien*, No. 1:18-CV-00032-RAL, 2021 WL 3174687, at *4 (W.D. Pa. July 27, 2021) ("An officer complaining publicly that an inmate is snitching on him or other corrections

Plaintiff also alleges that on November 27, 2023, Copes showed other inmates Plaintiff's charges, which include sex crimes against a child.  (Doc. No. 8 at 9.)  Plaintiff was subsequently told by some unidentified individual that he would need to "watch his back."  (*Id.*)  Then on December 5, 2023, Copes again discussed Plaintiff's charges with other inmates and later that day, Plaintiff was approached by inmates who fraternize with Copes and asked for his "paperwork."  (*Id.*)  These allegations are also sufficient to state a failure to protect claim against Copes.  Indeed, they resemble the facts the Third Circuit faced in *Moore v. Mann*, 823 F. App'x 92 (3d Cir. 2020).  There, after the plaintiff had filed a complaint against his former prison counselor, she began calling the plaintiff "a pedophile, gay, and a snitch" to other inmates.  *Id.* at 94.  Plaintiff filed a lawsuit against the counselor and other prison officials, asserting, in relevant part, a failure to protect claim.  *Id.*  After permitting the failure to protect claim to survive a motion to dismiss, the district court granted the defendants' motion for summary judgment, finding that there were no facts from which a jury could find that the defendants "knew of and disregarded the risk of serious harm that those statements would create."  *Id.* at 94–95.  The Third Circuit reversed, reasoning that "the sex offender label is stigmatizing in the prison context, and that prison norms may call for the assault of sex offenders."  *Id.* at 96; *see also Renchenski v. Williams*, 622 F.3d 315, 326 (3d Cir. 2010) ("It is largely without question . . . that the sex offender label severely stigmatizes an individual, and that a prisoner labeled as a sex

---

officers . . . does not, without more, create a substantial risk of serious harm to the inmate.").  These opinions reason that "[w]hile prisoners may be motivated to harm a fellow inmate who is or could be informing on them, that motivation for preserving inmate anonymity and solidarity does not exist when the inmate is accused of 'snitching' to prison officials about a corrections officer or other prison official— DOC staff who the inmates so often view as opposed to their interests."  *Id.*  This logic, however, is inapplicable here where Plaintiff alleges that Officer Copes had a "hit squad" or "enforcement team" of inmates who would do her bidding.  (Doc. No. 8 at 8–9.)  Taking this allegation as true, the Court finds that Copes calling Plaintiff a "rat" for wanting to file a grievance against her could subject him to risk at least from the individuals with whom she purportedly fraternized.

offender faces unique challenges in the prison environment."); *Dongarra v. Smith*, 27 F.4th 174, 179 (3d Cir. 2022) ("If other prisoners thought he was a sex offender, they might have assaulted or even killed him.  That is as serious as it gets.").  The court also rejected the defendants' argument that the plaintiff's claim failed because he had "not shown that he was assaulted or suffered any harm," with the court reasoning that "an inmate need not wait until an actual attack occurs to obtain relief."  *Moore*, 823 F. App'x at 96.

Here, like in *Moore*, Plaintiff has alleged that Copes shared his charges, which include sex crimes against a child, with other inmates, thus placing him at risk for being assaulted.  This risk was one that Copes, as a prison official, likely appreciated.  *See Dongarra*, 27 F.4th at 179 (holding that the subjective component of a failure to protect claim was met, in part, because "[i]t is obvious that branding [the plaintiff] a sex offender could make him a target of prison violence").  And while Plaintiff was never in fact assaulted by other inmates and instead only told to "watch his back,"  (Doc. No. 8 at 9), as the Court outlined in *Moore*, this does not prevent him from stating a failure to protect claim.  Thus, the Court finds that Plaintiff's failure to protect claim can proceed as it relates to the sharing of his charges.

* * *

In sum, Plaintiff has stated a claim against Officer Copes in her individual capacity for excessive force, First Amendment retaliation, and failure to protect.  Plaintiff's due process claim related to the purportedly false misconduct report, on the other hand, is dismissed without prejudice.[15]

---

[15] The Amended Complaint also contains allegations that Copes's "hit squad" received preferential treatment and fought inmates other than Plaintiff.  (Doc. No. 8 at 10.)  However, the Court does not understand Plaintiff to be asserting claims based on this conduct and fails to see how these incidents violate Plaintiff's constitutional rights.

C.      **Claims Against Major Butler**

The Court turns next to Plaintiff's claim against Major Butler, which is premised on

Butler's failure to respond to his grievance about Copes.  (Doc. No. 8 at 7 (providing that

Plaintiff "hold[s] Major Butler responsible for not answering the grievance [he] submitted").)

Liberally construing Plaintiff's Amended Complaint, it appears that Plaintiff intends to bring a

procedural due process claim under the Fourteenth Amendment.  (*Id.*)  However, such a claim is

not cognizable.  To state a claim under the Fourteenth Amendment Due Process Clause, Plaintiff

must allege that he has a constitutionally protected liberty or property interest at stake.  *See*

*Fantauzzi v. Wetzel*, No. CV 18-5166, 2019 WL 4543095, at *5 (E.D. Pa. Sept. 18, 2019)

("Where an inmate has no protected interest relating to his claim, there cannot be deprivation of

due process requiring constitutional redress.").  But it is well established that "[p]rison inmates

do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F.

App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Anderson v. Pennsylvania*, 196 F. App'x

115, 117 (3d Cir. 2006) ("[I]n order to state a due process claim, [Plaintiff] needed to show the

deprivation of a constitutionally-protected liberty or property interest in a procedurally deficient

manner, and he failed to do so.  [Plaintiff] does not have a liberty interest protected by the due

process clause in the inmate grievance procedures.") (citations omitted).  Thus, "any allegations

of improprieties in the handling of his grievance" do not raise constitutional concerns and do

"not state a cognizable claim under § 1983."[16] *Williams v. Armstrong*, 566 F. App'x 106, 109

(3d Cir. 2014); *see also Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011)

(per curiam) ("[B]ecause a prisoner has no free-standing constitutional right to an effective

---

[16] If anything, Defendants' failure to respond to Plaintiff's grievances would "simply allow him to overcome an affirmative defense of non-exhaustion."  *See Allah v. Thomas*, 679 F. App'x 216, 219 (3d Cir. 2017).  But it does not independently "give rise to a constitutional claim." *Id.*

24

grievance process, [a prisoner] cannot maintain a constitutional claim . . . based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances." (citation omitted)).

Since this issue cannot be redressed through more articulate pleading, the Court will dismiss Plaintiff's claim regarding the handling of his grievances with prejudice.  *Caterbone v. Lancaster Cnty. Prison*, No. 19-CV-2052, 2019 WL 2774162, at *3 (E.D. Pa. July 2, 2019), *aff'd*, 811 F. App'x 721 (3d Cir. 2020) (dismissing claim regarding prison grievance system with prejudice at the screening stage); *Easton v. Penchishen*, No. 21-CV-5464, 2022 WL 407640, at *2 (E.D. Pa. Feb. 10, 2022) (same).[17]

### D.    Claims Against Lieutenant Hill

Finally, the Court turns to Plaintiff's claims against Lieutenant Hill, who Plaintiff claims was the supervisor of his building and in charge of "picking up grievances and disciplining his staff."  (Doc. No. 8 at 4.)  Plaintiff's allegations against Hill are two-fold.  First, Plaintiff alleges that he spoke to Hill "on various [occasions] about the unprofessional conduct of C/O Copes" and in response, Hill spoke to Copes and told Plaintiff to file a grievance.  (*Id.*)  When Plaintiff informed Hill that he had already filed two grievances, Hill responded that "due to the staff shortages" it was unlikely that these grievances would be addressed and that Plaintiff "should just stay out of jail."  (*Id.*)  Second, Plaintiff avers that Hill "signed off on" Copes's misconduct

---

[17] Furthermore, a prison official's involvement in the grievance process generally does not establish personal involvement in the underlying constitutional violation.  *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (per curiam) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (per curiam) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews.").  Accordingly, to the extent Plaintiff intended to assert a constitutional claim against Butler for the conduct underlying the grievance, such a claim is not plausible.

report related to the November 21, 2023 incident.  (*Id.*)  Liberally construing Plaintiff's complaint, it appears Plaintiff is asserting a claim for supervisor liability against Hill for Copes's conduct, a claim for verbal harassment, and a claim for violating his due process rights by signing off on a false misconduct report.  The Court addresses each in turn.

First, Plaintiff appears to be asserting that Hill should be held liable under a theory supervisor liability for Copes's unconstitutional actions.  As discussed above, while liability under § 1983 cannot be predicated on a respondeat superior basis, and state actors typically "are liable only for their own unconstitutional conduct," "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct."  *Barkes*, 766 F.3d at 316.[18]  Here, there is no allegation that Hill personally participated in violating Plaintiff's rights or directed others to violate Plaintiff's rights.  And with regard to knowledge and acquiescence, while Plaintiff has alleged that he spoke with Hill about Copes's "unprofessional conduct" on "various occasions," he doesn't provide any detail as to *when* these conversations occurred or what information he conveyed such that the Court can infer that Hill knew Copes was violating Plaintiff's constitutional rights.  *See Hall v. Piazza*, No. 1:CV-10-1738, 2011 WL 4402093, at *8 (M.D. Pa. Sept. 22, 2011) ("Allegations of actual knowledge and acquiescence must be made with particularity." (citing *Rode*, 845 F.2d at 1207)).  And even if Plaintiff did report all information contained in his Amended Complaint, as Plaintiff acknowledges, Hill spoke with Copes and directed Plaintiff to file a grievance.  Such

---

[18] A supervisor can also be held liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes*, 766 F.3d at 316.  However, because Plaintiff nowhere alleges that he was subjected to an unconstitutional policy or custom crafted by Hill, the Court need not address this avenue for supervisor liability.

conduct hardly suggests that Hill acquiesced in Copes's unconstitutional conduct.  *Cf. Green v. Coleman*, No. 2:15-CV-00155, 2016 WL 5477578, at *3 (W.D. Pa. Aug. 18, 2016), *report and recommendation adopted*, No. 15-CV-155, 2016 WL 5468190 (W.D. Pa. Sept. 29, 2016) (permitting retaliation claim to go past screening where supervisor knew about the retaliatory actions of the correctional officers and "chose not take *any corrective action*" (emphasis added)).  Thus, Plaintiff has not stated a claim for supervisory liability against Hill.

Second, to the extent Plaintiff intends to assert a claim for harassment premised on Hill's statement that he should "just stay out of jail," it is well established that verbal harassment alone is not actionable under § 1983.  *See, e.g.*, *Smith v. Mun. of Lycoming Cnty.*, 335 F. App'x 147, 150 (3d Cir. 2009) ("Mere verbal harassment or abuse . . . is not a civil rights violation." (citation omitted)); *Sears v. McCoy*, 815 F. App'x 668, 670 (3d Cir. 2020) (holding that dismissal at screening of Plaintiff's verbal harassment claim was proper and noting that "[a] prisoner's allegations of verbal harassment, unaccompanied by another injury, are not cognizable under § 1983"); *Concepcion*, 2021 WL 2529816, at *6 (dismissing claim for harassment at screening and noting that "mocking and verbal harassment of a prisoner simply do not give rise to an independent constitutional violation").  Thus, while Hill's comment was unprofessional, it is not of constitutional magnitude and this claim is not viable.

Finally, Plaintiff cannot state a claim against Hill for signing the allegedly false misconduct report for the reasons discussed above.  *See supra* § III.B.2.  Thus, Plaintiff has not alleged a plausible basis for a constitutional claim against Hill and these claims are dismissed without prejudice.[19]

---

[19] The Amended Complaint also denotes "deliberate indifference" next to Hill's name.  However, it is not clear on what basis Plaintiff believes Hill acted with deliberate indifference.  To the extent Plaintiff is alleging that Hill was deliberately indifferent through her response to Plaintiff's complaints regarding Copes's conduct, he has not alleged adequate facts from which one could plausibly infer that Hill knew of

**IV.     CONCLUSION**

For the foregoing reasons, the Court will grant Plaintiff leave to proceed *in forma pauperis* and dismiss all of his claims against Defendants Angelucci and Hill without prejudice and with leave to amend.  Plaintiff's claim against Butler, which relates to the handling of grievances, is dismissed with prejudice and cannot be reasserted in this matter.  Plaintiff will be permitted to proceed at this time on the following claims against Defendant Correctional Officer Copes:  (1) his excessive force claim based on the use of pepper spray on November 21, 2023; (2) his First Amendment retaliation claim; and (3) his failure to protect claims based on Copes calling Plaintiff a rat and exposing his charges to other inmates.  Any other claims against Copes are dismissed without prejudice and with leave to amend.

Rather than directing service of the Amended Complaint on Copes at this time, the Court will give Plaintiff an opportunity to file a second amended complaint in the event he can allege additional facts to cure the defects identified herein for those claims that have not been dismissed with prejudice.  An Order follows, which provides further guidance to Plaintiff about his options for proceeding.

---

and disregarded a risk to Plaintiff's safety based on these discussions.  Indeed, as discussed above, Plaintiff alleges that Hill spoke with Copes after Plaintiff raised his concerns.